## Ruddy v. Autographic Reg. Co., Appellant.

600

Argued October 15, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Albert S. Longbottom* of *Byron, Longbottom, Pape & O'Brien,* for appellant.

*A. Walling Levin,* for appellee.

Opinion by Linn, J., January 27, 1932:
Plaintiff, a salesman, has judgment for salary. The

employer appeals. Defendant employed plaintiff January 14, 1929, by written contract, agreeing to pay him at specified rates of commissions on sales; it also provided: "The company agrees to pay the salesman a draw of $150 a week to be charged against his commission account. This draw to continue to July 1, 1929." When that date arrived, the defendant, by paying the draw at the weekly rate specified had paid to plaintiff $1770.42 in excess of the commissions earned. On July 16, 1929 the parties executed another writing, in the form of a letter to the plaintiff and accepted by him; "It being mutually understood and agreed that your present contract was cancelled June 29, 1929, and in consideration thereof, a new contract was entered into beginning July 1, 1929, and expiring December 31, 1929. The details of the new arrangement are as follows: You are to receive a salary of $100 per week payable weekly. ...... If at the end of this contract period 10% of the net business turned into the company by you exceeds what you have received as salary, the company will pay you the said difference. If, on the other hand, 10% of the net volume of business turned in by you during this period does not equal your salary for that period, the company will not charge you with the difference, realizing that a good part of your time will of necessity be devoted to development work on teletype."

October 31, 1929, defendant discharged plaintiff and advised him that "The amount which would accrue to you between now and the first of the year, had these services continued, will be credited to your present indebtedness to the company." Plaintiff denied then owing defendant anything, demanded payment of his salary, and brought suit. The parties agreed that plaintiff was entitled to some $900 with interest; defendant, however, counter-claimed against that for the amount which it had charged against plaintiff on

its books on June 29 representing the excess of payments to him on the "draw" of $150 a week, over the amount of commissions earned to that date, $1770.42, and asked for a certificate. The learned president judge of the court below was of opinion that the parties had cancelled the first contract, made a new one, wiping out the charge against plaintiff, and, accordingly ordered judgment for the salary admitted to be due with interest.

We cannot see how any other result can be reached. No question of fact is involved, the construction of the papers is for the court. They said they "cancelled" one contract and made a "new contract;" it is complete in all its details. If the debit charge against plaintiff existing June 29 was to be kept alive, why did they agree that if "10% of the net business turned into the company" exceeds the $100 a week salary "the company will pay" the difference, and if it was less "the company will not charge you with the difference, realizing etc." (supra)?

Appellant cites cases to support the proposition that an agreement to terminate a contract, in given circumstances, may not release rights of action for existing breach, but it is obvious from the account of the transaction given above, the rule has no application to this case: see generally Dreifus v. Salvage Company 194 Pa. 475; 6 R. C. L. p. 942 s. 323; Williston, Contracts Vol. III s. 1827.

Judgment affirmed.